### 7473

### *EX PARTE* PEELE.

ADMINISTRATORS AND EXECUTORS.—A NON-RESIDENT may be appointed administrator.

*In re Neubert,* 58 S. C., 469, *criticised.*

Before WATTS, J., Marlboro, September, 1909. Reversed.

Petitions in probate court by Thomas Peele and H. R. Peele for administration on the estate of Wm. Peele. From circuit order affirming judgment of probate court, Thomas Peele appeals.

*Messrs. Townsend & Rogers,* for appellant, cite: *An obiter dictum in an opinion is not binding on the Court:* 36 S. C., 84; 13 S. C., 354; 42 S. C., 223; 33 S. C., 442; 5 Ency., 662; 59 S. C., 60. *Construction of statutes:* 77 S. C., 24; 12 Rich., 628.

*Messrs. McColl, McColl & LeGrand,* contra, cite: *Reference to title in construing an act:* Chev. L., 157; 2 Bail. L., 334, 554. *Non-resident should not be appointed:* 58 S. C., 469.

March 5, 1910. The opinion of the Court was delivered by

MR. JUSTICE WOODS. This matter was heard by the Circuit Judge under the following agreed statement of facts:

"That on the 26th day of July, 1909, H. R. Peele made application for letters of administration on the estate of William Peele, deceased.

"That a citation was issued by judge of probate in the regular form, returnable on the 16th day of August, 1909, at eleven o'clock in the forenoon, and was duly published according to law.

"That on the return day H. R. Peele appeared before probate court in person, also his attorneys, Messrs. McColl, McColl & LeGrand, and demanded that letters of administration be granted to him.

"That Thomas Peele also appeared in person, together with his attorneys, Messrs. Townsend & Rogers, and asked the Court to grant letters of administration to him on the said estate of William Peele, deceased.

"That it was admitted in open Court that H. R. Peele was a resident of Marlboro county, in the State of South Carolina, and that Thomas Peele was a resident of Scotland county, in the State of North Carolina, and it was also admitted that H. R. Peele and Thomas Peele were sons of

10—85

William Peele, deceased, and that the said William Peele, deceased, resided in and died in the County of Marlboro, in the State of South Carolina.

"That the probate judge held that no non-resident could be legally appointed administrator in South Carolina. From this holding Thomas Peele gave notice of appeal to the Court of Common Pleas. And it is agreed that the probate judge declined to consider the force and effect of the petition of either applicant for the appointment until this appeal could be heard and determined."

The Circuit Judge affirmed the judgment of the probate judge. The appeal raises the single question whether in this State a non-resident may be appointed administrator?

There can be no doubt that at common law non-residence was not a disqualification. *Thompson* v. *Hucket,* 2 Hill, 347; *Jones* v. *Jones,* 2 Rich., 623.

The statute relied on as changing the law and forbidding the appointment of non-residents was enacted in 1878, and is now incorporated in the Civil Code as sections 2558 and 2559. The title of the act is: "An act to provide a mode for revoking letters testamentary and of administration when an executor or administrator has removed from the State, and to more effectually protect the interests of minors, lunatics and persons *non compos mentis.*"

The enactment is: "That when any executor or administrator has, since the grant of letters testamentary or of administration, or any trustee, guardian of minors, committee of lunatics and persons *non compos mentis,* changed his domicile to a place beyond the limits of this State, or has been absent from the State for ten consecutive months then last past, and such change or absence is made to appear to the satisfaction of the judge of probate of the county wherein the letters were granted or appointment made, it shall be the duty of such judge of probate to cite such executor or administrator, trustee, guardian of minors, committee of lunatics and persons *non compos mentis* to account

in person before him on a day named in the citation, which shall not be less than sixty days from the date thereof; and such citation shall be served upon such absent executor or administrator, trustee, guardian of minors, committee of lunatics and persons *non compos mentis* by publication forthwith, once a week for four weeks, in the newspaper in which the said judge of probate publishes his official advertisements, and a copy shall be mailed to such absent executor or administrator, trustee, guardian of minors, committee of lunatics and persons *non compos mentis* at his or her or their place of residence, if it is known or can with reasonable diligence be ascertained.

Sec. 2. "If, upon such citation, such absent executor or administrator, trustee, guardian of minors, committee of lunatics, and persons *non compos mentis, fail to appear in person upon the day named and render a return of his administration up to date, or, appearing by attorney, fails to disprove a change of domicile and continuous absence for ten months next preeceding the date of citation, in the case of an administrator the letters of administration shall be revoked;* and in the case of an executor, such failure shall be received as a formal renunciation of the office, notwithstanding his previous acceptance; and in the case of any trustee, committee or guardian, the appointment shall be revoked and annulled."

The General Assembly must be presumed to have known that the common law allowed non-residents to be appointed administrators, and if the intention had been to change the law in that respect, it is reasonable to suppose that the intention would have been carried out by a simple and direct enactment that a non-resident should not be appointed administrator in this State. The failure to adopt the direct and obvious method of enactment raises a very strong presumption against an intention to make a change so radical by circumlocution. In such a case the Courts should be

very cautious in inferring an intention which could have been so directly and easily expressed.

But aside from this, giving the most liberal construction, the act contains nothing from which such an intention may be inferred. It provides that the administration granted to one who has become a non-resident shall be revoked in either of two conditions: First, when the administrator who has become non-resident fails to appear *in person* on the day named in the citation and render a return of his administration up to date; or second, when appearing *by attorney* he fails to disprove a change of domicile and continuous absence for ten months next preceeding the date of citation.

In making the explicitly expressed distinction between appearance in person and appearance by attorney, it seems plain that the purpose was not to require revocation of the administration of a non-resident, but to allow it to continue as long as he presented his accounts in person to the Court to be passed on in obedience to the law, and by coming, subjected himself to the jurisdiction of the Court; but to require revocation when he appeared only by attorney and failed to show that he was by actual residence subject to the jurisdiction. This plainly expressed limitation of the purpose of the Legislature forbids the inference that the intention was to go beyond what was expressed and provide for the removal of all administrators who moved out of the State, and to prohibit the appointment of non-residents. Such an inference could be drawn only by much straining of the language of the statute.

There is another reason for refusing to force the language of the statute into a significance beyond what it expresses. The statute applies not only to administrators but to executors, guardians, committees and all *trustees,* and if it prohibits the appointment of a non-resident administrator, it prohibits also the appointment of a non-resident as executor, guardian or trustee of any kind. The great inconvenience and annoyance which would result to resi-

dents of this State whose kindred, trusted friends or business associates live in other States is too obvious to require particular mention. A construction of the statute which would result in such hardship should not be adopted where the language used does not clearly require it.

The title is relied on as indicating that this forced construction should be given to the statute; but it indicates nothing more than that the act will provide "a mode" for revoking administration when an administrator or executor has removed from the State. This is not in the least inconsistent with the meaning of the act that when an administrator or other trustee removes from the State and fails when cited to do the things required by the act, he shall be removed.

The remarks of Chief Justice McIver in the case of *In Re Neubert,* 58 S. C., 469, 36 S. E., 908, indicate his view to have been that the statute under consideration prohibited the appointment of a non-resident as administrator. But the case in no wise depended on that point, and the remarks of the Chief Justice are *obiter dicta,* not attended by any analysis of the statute. Even an *obiter dictum* from Chief Justice McIver is entitled to great consideration, but it should not control when opposed to the result of careful examination of the law in a case where the question is directly involved.

The expediency of appointing a non-resident as administrator is of course quite another matter, depending largely on the discretion of the probate judge.

The judgment of this Court is, that the judgment of the Circuit Court be reversed.