13013

SOUTHERN RAILWAY CO. v. MOORE

(155 S. E., 740)

October, 1927.

*Messrs. Harley & Blatt* and *Frank G. Tompkins,* for appellant,

*Messrs. W. C. Wolfe* and *R. C. Holman,* for respondent, November 4, 1930.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE C. T. GRAYDON.

Edwin A. Wagnon, who resided in Augusta, Ga., was killed at Branchville, S. C., by a railroad train, commonly known as the Carolina Special, operated by the appellant. At the time Wagnon was killed, he was the engineer on a train which ran between Branchville, S. C., and Augusta, Ga. He attempted to walk across the track of the main line going to his engine and was struck by the Carolina Special and killed instantly. He left a will appointing his wife executrix, and on the 13th day of April, 1927, the will was duly admitted to probate in the Court of Ordinary, Richmond County, Ga. The widow, Caroline E. Wagnon, duly

qualified as executrix and was issued letters testamentary by the Court.. On or about June 8, 1927, R. R. Moore, at the request and solicitation of Mrs. Wagnon, filed his petition in the Probate Court of Orangeburg County praying that letters of administration be granted to him upon the estate of the said Wagnon, and on August 29, 1927, such letters were duly issued to Moore, the respondent herein.

In August, 1927, Moore, acting in his representative capacity, commenced suit in the Court of Common Pleas for Barnwell County against the Southern Railway Company for damages under the Federal Employers' Liability Act (45 U. S. C. A., §§ 51-59) for the alleged wrongful death of Wagnon, the said action being brought for the benefit of the widow and children of Wagnon in accordance with the terms of the act and by agreement considered by all parties to be thereunder (Cf. 26 *Moore v. Southern Railway Company,* Transcript of Record).

The railroad company made answer to the complaint and, among other things, denied that Moore had the legal capacity to bring and maintain the action.

In addition to this denial, on September 12, 1927, the Southern Railway Company filed its petition in Orangeburg County before the Probate Court praying that the letters issued to Moore be revoked. A rule to show cause was issued, and the Probate Court, on September 20, 1927, heard the matter. On September 24, 1927, the Probate Judge of Orangeburg County passed an order discharging the rule and refusing to revoke the letters of administration. The company appealed to the Court of Common Pleas of Orangeburg County, and upon the hearing of the appeal his Honor, Judge S. W. G. Shipp, on October 7, 1927, passed a formal order dismissing the appeal and affirming the order of the Probate Court. The railroad company then appealed to this Court from the order of Judge Shipp.

It is well settled in this State that when a non-resident of South Carolina is killed by reason of the wrongful act of some person or corporation within the State of South Carolina, letters of administration will be granted to a citizen of South Carolina for the purpose of bringing the suit for the wrongful death under Lord Campbell's Act. *In re* Estate of Mayo, 60 S. C., 401, 38 S. E., 634, 54 L. R. A., 660.

It has also been decided by the Supreme Court of this State that where a resident of South Carolina dies in another state and leaves a will which is admitted to probate, letters of administration granted in the state in which the party died are merely ancillary letters and are subject to and under the control of the principal letters granted in South Carolina. *Wolfe v. Bank of Anderson,* 123 S. C., 208 116 S. E., 451.

In the *Wolfe case, supra,* Lexius Hinson was a resident of the County of Anderson. His wife died in Anderson, and he went to Augusta to place his two children with his wife's people. While in Augusta on this mission he contracted his fatal illness and died there. Administration was taken out of the Ordinary Court of Richmond, County, Ga., and later a will was filed in the County of Anderson, S. C. Our Court held that the letters of administration in Georgia were subservient to and subject to the letters in South Carolina.

From the reasoning of the above cases it seems that it has been settled in South Carolina that an administrator can be appointed solely for the purpose of bringing an action under Lord Campbell's Act; that where the principal administration is in one state any letters taken in another state are ancillary. Therefore, the letters of administration to Moore were merely ancillary letters and were properly and correctly issued.

As stated in the *Mayo case,* above, the railroad company being merely a contingent debtor would have no right in any event to question the validity of the proceedings except as to a jurisdictional defect appearing on

the face thereof. The railroad has no interest in the administration except to defeat the claim of the administrator. The interest of the railroad and the interest of the estate are absolutely contradictory.

This cause of action, having been brought and tried under the Federal Employers' Act of Congress and the Act amendatory thereto, the rules of law governing the same would be controlled by the Federal decisions and the State decisions above cited are merely for the purpose of showing that under the South Carolina law Moore was an ancillary administrator of the estate. The Federal rule is clear and conclusive on this question, and although the executor from Georgia might be able to maintain the suit in some jurisdictions, the general rule is that such executor could not maintain an action of this character in a foreign state in the absence of an enabling statute.

A Kentucky statute giving foreign administrators the right to sue for recovery of debts due the decedent was held to confer no capacity to sue for the wrongful death of such decedent, though such power might be given to a domiciliary administrator. *Maysville Railway Transfer Co. v. Marvin* (C. C. A.), 59 F., 91.

Under the New Jersey law the explicit right is given to foreign administrators to bring a suit under the provisions of what is commonly known as the New Jersey Death Act (2 Comp. St., 1910, pages 1907-1911, §§ 7-9, as amended). See, also, *J. B. & J. M. Cornell Co. v. Ward* (C. C. A.), 168 F, 51.

In Ohio the right to sue in the name of a foreign administrator is expressly conferred by statute. Rev. St. Ohio, § 6133. Federal Courts have held that the right of action for death of an employee under the Federal Employers' Liability Act is not vested exclusively in a domiciliary administrator, but that such action might be maintained by an ancillary administrator. *Anderson v. L. & N. Railroad Co.*

(C. C. A.), 210 F. 689. Sée, also, *Dodge v. Town of North Hudson* (C. C.), 188 F., 489.

The question here involved is not as to whether the executor from Georgia could sue and recover, but as to whether or not the South Carolina administrator can prosecute the suit. It is very dobutful whether the executor from Georgia could qualify under the law of South Carolina and receive an appointment by the Probate Court of South Carolina. *In re* Estate of Neubert, 58 S. C., 469, 36 S. E., 908.

The statute provides that a non-resident cannot be appointed executor or administrator, and in addition that if such executor or administrator shall change his. domicile beyond the limits of the State his letters shall be revoked. This by clear implication shows that Mrs. Wagnon could not have been appointed executor or administrator under the laws of South Carolina.

There is no question that the suit can be brought only by the personal representative of the deceased. *American Railway Co. v. Didricksen,* 227 U. S., 147, 33 S. Ct., 224, 57 L. Ed., 456; *Missouri, K. & T. Railway Co. v. Wulf,* 226 U. S., 570, 33 S. Ct., 135, 57 L. Ed., 355, Ann. Cas., 1914-B, 134.

It has further been held repeatedly that an ancillary administrator may bring and prosecute the suit, particularly when the same is prosecuted with the approval of a domiciliary administrator. *Anderson v. L. & N. Ralway Co.* (C. C. A.), 210 F., 689.

Therefore, under the law of South Carolina, as well as under the Federal law, the South Carolina administrator, Moore, should be permitted to carry on the suit particularly where he is in fact merely an ancillary administrator.

All the railroad is interested in is whether or not the payment of a judgment to Moore as administrator, if one is obtained, would forever bar any other recovery in the same action. This Court holds that such payment would

bar any future recovery from the same cause of action, and upon the railroad company paying the money to Moore for the purpose of distribution under the statute its rights would be fully protected.

There is still another reason why the administration in South Carolina should be upheld. It was taken admittedly, not only with the knowledge and consent of the executrix, but at her direction and suggestion. The suit is being brought for her benefit among others.

The order of the Circuit Court should therefore be affirmed, and the majority of the Court having concurred in this opinion, it is so ordered.

MESSRS. JUSTICES BLEASE and STABLER concur.

MR. JUSTICE CARTER concurs in result.

MR. JUSTICE COTHRAN (dissenting) : This is an appeal from an order of his Honor Judge Shipp, dated Octobre 7, 1927, affirming formally, and order of the Probate Judge of Orangeburg County, dated September 24, 1927, dismissing a petition of the railway company, to revoke letters of administration which had been granted to R. R. Moore upon the estate of Edwin A Wagnon, deceased, by the Probate Court of Orangeburg County.

The conceded facts bearing upon the appeal are these :

Edwin A. Wagnon, an engineer on a passenger train of the Southern Railway Company running from Augusta, Ga., to Branchville, S. C., was killed at the depot at Branchville by another passenger train known as the Carolina Special. Wagnon lived in Augusta, Ga., and left a will appointing his wife executrix thereof, which has been duly admitted to probate in the Court of Ordinary of Richmond County, Ga., on April 13, 1927. The widow, Caroline E. Wagnon, duly qualified as executrix and was issued letters testamentary by said Court; she is now and has been since her qualification acting as such executrix.

On or about June 8, 1927, the respondent, Moore, a resident of Barnwell County, filed his petition in the Probate

Court of Orangeburg County praying that letters of administration be granted to him upon the estate of said Wagnon, and on August 29th such letters of administration were granted to him.

On August ...., 1927, Moore as administrator commenced an action in the Court of Common Pleas of Barnwell County against Southern Railway Company for damages under Lord Campbell's Act for the alleged wrongful death of Wagnon; it being alleged in the complaint that the action was brought for the use and benefit of the widow and children of said Wagnon.

The railway company made answer to the complaint and, among other things, denied specifically that the appointed administrator had legal capacity to bring and maintain the action.

On September 12th the railway company filed its petition in the Probate Court of Orangeburg County praying that the letters of administration which had been issued to Moore be revoked. Upon this petition the Probate Court issued an order requiring Moore to show cause why the letters of administration should not be revoked.

The administrator made return to this rule and the matter was heard before the Probate Judge at Orangeburg on September 20th; on September 24th he passed an order discharging the rule to show cause and sustaining the grant of letters of administration. The company appealed from this order to the Court of Common Pleas of Orangeburg County. The appeal was heard by his Honor, Judge Shipp, on October 6, 1927, and on the following day he passed a formal order dismissing the appeal and affirming the order of the Probate Judge. From this order the railway company has appealed.

The sole question upon appeal is whether an administrator can be appointed in South Carolina, where the alleged wrongful death was caused, of the estate of a citizen and resident of the State of Georgia, who died leaving a will

of which a personal representative has qualified and is acting, for the purpose of bringing an action under Lord Campbell's Act.

The question may be resolved by determining who, under these circumstances, has the right to institute the action, and by a process of exclusion, determining who has not.

The rule is well settled that a foreign executor or administrator of a foreign decedent's estate may not bring an action in the Courts of this State to collect assets located here belonging to that estate, for the reason that otherwise the creditors of the decedent would be inconvenienced in the collection of their claims by having to go into the foreign jurisdiction and calling the representative to account there.

The case of *Wolfe v. Bank,* 123 S. C., 208, 116 S. E., 451, 452, however, recognizes the rule that if there are no local creditors, legatees, or distributees of the decedent in this State, a foreign representative may collect debts in this State due to the decedent and distribute the proceeds according to the laws of the domicile of the decedent; under the same circumstances, no reason appears why he could not sue for the collection of such debts.

In the *Wolfe case* it was held that the domicile of the decedent was in this State; that the administrator appointed by the Georgia Court was a foreign administrator; that there were creditors of the decedent in this State; and that consequently an acquittance given to the foreign administrator by a debtor in this State did not protect the debtor from the demand of the representative appointed by the Court of this State.

"This comity, however, does not extend so far as to permit a foreign representative to take possession of and remove assets beyond the jurisdiction of the State, when such removal may be prejudicial to creditors who are citizens of the State." Quoting from 11 R. C. L., 432, and citing *Dial v. Gary,* 14 S. C., 573, 37 Am. Rep., 737; *Stoddard v. Aiken,* 57 S. C., 134, 35 S. E., 501.

The Court further said:

"In the case of *Wilkins v. Ellett,* 108 U. S., 256, 2 S. Ct., 641, 27 L. Ed., 718, it was held that a foreign administrator could make collection and give a valid acquittance to a debtor residing in the state of the domicile of the decedent provided there were neither creditors nor next of kin in the state of the domicile of the decedent. The foregoing case was quoted with approval by our Supreme Court in the case of *Jones v. Jones,* 39 S. C., 256, 17 S. E., 591, the Court quoting in italics the following words: "There having been no creditor of the intestate in this last place, nor any persons there entitled as distributees'— and adding thereafter these words: This is the law in South Carolina.' "

If there should be assets of the Georgia decedent's estate in this State and creditors, legatees, or distributees citizens of this State, the foreign representative could neither collect nor sue for debts due to the decedent, but it would be required that he take out an ancillary administration in this State.

From the extended consideration and citation of authorities contained in the opinion of the writer hereof, in the case of *Boyd v. Richie,* 159 S. C. . . ., 155 S. E., 844, now in process of decision, it appears settled that the damages which might be recovered by the personal representative, under Lord Campbell's Act, are not at all assets of the decedent's estate but constitute a fund which passes through the hands of the representative as a trustee of the beneficiaries, not subject to the debts of the decedent. There can be no reason therefore for attempting to protect the creditors of the decedent, which is the foundation of the rule which inhibits the foreign representative from collecting or suing to recover the assets of the decedent.

There cannot be urged therefore any objection to an action by the executrix, in the Courts of this State, against the railway company, which is alleged to have wrongfully

caused the death of her testator, notwithstanding the fact that she was appointed by the will which has been probated in Georgia.

The precise point was decided in the case of *Pearson v. R. Co.* (D. C.), 286 F., 429, 430, where it was held that the rule in force in Virginia that a foreign administrator may not maintain an action in its Courts to recover assets of the estate is for the protection of possible local creditors, and does not apply to an action by a foreign administrator to recover for the death of his intestate based upon the Code of West Virginia (Chapter 103, § 6), which phovides for distribution of the amount recovered and that it "shall not be subject to any debts or liabilities of the deceased."

The Court quotes from *Fugate v. Moore,* 86 Va., 1045, 11 S. E., 1063, 19 Am. St. Rep., 926, as follows:

"Administration only extends to the assets of the intestate within the state where it was granted. If it were otherwise, the assets might be drawn out of the state, to the great inconvenience of domestic creditors, and be distributed, perhaps, on very different terms, according to the laws of another jurisdiction."

And cites Story on Conflict of Laws (2nd Ed.), 421; Minor's Conflict of Laws, 225; Schouler's Exor. & Admrs. (2nd Ed.), 23, and concludes:

"The reason that the rule in question canot possibly apply here is that, by the express terms of the West Virginia wrongful death statute, no creditor of the decedent as such has the slightest interest in or right to the recovery sought by the plaintiff at bar. The foreign administrator here sues to recover a fund which is not to be administered, but is merely to be distributed. When the reason for a rule fails, the rule ceases to apply. And it follows that there is no reason to be found in the policy of the law of Virginia why the plaintiff here may not maintain this action."

In 24 C. J., 1131, § 2703, it is said:

"A foreign representative may sue to collect a claim where, under the law of the state where the action must be brought, his claim could not be made the subject of local administration, since in such cases the reasons for the rule prohibiting suits by foreign representatives do not apply."

The case of *In re Estate of Mayo,* 60 S. C., 401, 38 S. E., 634, 638, 54 L. R. A., 660, is not conclusive of the question at issue. In that case the contention of the railway company which was alleged to have wrongfully caused the death of Mayo was that Mayo was a resident of the State of Florida; that he left no estate in South Carolina; that there was nothing in the case but the cause of action for the benefit of his heirs-at-law under Lord Campbell's Act; and that the probate Court of Florence County in this State was without jurisdiction to grant letters of administration. The conclusion of the Court in the leading opinion by Mr. Justice Jones was thus expressed:

"Whereas, we think the statute is in terms broad enough to cover any person resident or non-resident with or without property in this State."

It is assumed that Mr. Justice Pope concurred generally in this opinion, Mr. Justice Gary concurred in the result, and Chief Justice McIver dissented. Upon this point it thus appears that the decision is authority for that case only.

It will be observed that the leading opinion is based upon this proposition:

"It is argued that administration should be granted in the State where the deceased was domiciled—Florida in this case. * * * And, in case administration could be obtained in Florida, the appointment there would not authorize a suit by the administrator in this Sate in the absence of a statute of this State permitting it, and there is none."

The Chief Justice in our opinion correctly stated the law upon this proposition, in his dissenting opinion:

"* * * There is certainly high authority for saying that in such a case the administrator of the domicile could

bring the action. The reason for the rule that a foreign administrator cannot sue in this State, as usually given, is that it is necessary for the protection of the rights and interests of the creditors of the decedent within the State; and, as the rights of creditors are in no way involved in a case like this, the reason for the rule ceases, and under the maxim, *'cessante ratione legis, cessat ipsa lex,'* that rule would not apply in a case like this."

The logic appears irresistible that if the proceeds of an action under Lord Campbell's Act are not assets of the estate of the decedent, the personal representative is but a trustee for the beneficiaries under the statute. There appears no reason why a trustee under foreign appointment may not bring an action in this State under his own name.

It is manifestly improper to confuse the present issue with the general rules relating to domiciliary and ancillary administration. There is no question but that where a decedent a citizen of another State than South Carolina dies either in the State of his domicile or in South Carolina, leaving assets in both states, the original or domiciliary administration is in the State of his domicile; administration should also be had in South Carolina, known as ancillary administration for the purpose of assembling the assets situated in South Carolina, the payment of the creditors in this jurisdiction and the transmission of the remainder to the domiciliary administrator. The propriety of appointing an ancillary administrator depends upon the existence of assets of the estate applicable to the debts of the decedent; if there are no such assets, there can be no ancillary administration.

There is a marked distinction between the status of the estate of one who dies a citizen of one state, leaving a will affecting his property in the home state and in another state, and of one under similar circumstances who dies without a will. In the one case the will is probated in the home state, the personal representative qualifies there and administers the home assets; he then files an exemplified

copy of the will in the other state, qualifies there, and administers the assets there.

In the other case there being nothing which can be filed in the foreign state, he is obliged to take out ancillary administration in the foreign state and administer the assets there. Of course, if he should fail for any reason to do so, some other person may be appointed for that purpose.

As the Court says in *Dial v. Gary,* 14 S. C., 573, 37 Am. Rep., 737 :

"True, if the decedent has left a will or testament, upon such testament being established under the *lex domicilii,* it will usually be confirmed under the jurisdiction where the property is found. And the title of the executor, as well as the disposition of the property therin appointed and directed will be recognized there. But this confirmation must take place and be had in accordance with the laws of the *rei sitæ* before even an executor under such testament can intermeddle with the property. But in cases of intestacy there must be a grant of administration in such jurisdiction where property is found; it being well settled that the grant of no state, not even the grant of the state of the domicile, can extend beyond the territory of the government which grants it. Nor can it invest the administrator with title to any movable property, except to such as may be found within its limits."

Section 5355 of the Code, Vol. 3, provides :

"If a will be regularly proved in any foreign Court, an exemplification of such will may be admitted to probate in this State upon the exemplification and certificate of the Judge of the Court of Probate.  *   *   *"

This, of course, does not dispense with the necessity of the qualification of the executor under the laws of this State. *Patterson v. Pagan,* 18 S. C., 584; *Reynold's Ex'rs v. Torrence,* 2 Brev., 59; *Thornton v. Dean,* 19 S. C., 583, 45 Am. Rep., 796.

It seems perfectly clear therefore that where there are in this State assets of a testator, a citizen of another State whose will is there probated, the executor of the home State may file an exemplified copy of the will in this State, qualify as executor under our laws, and proceed to administer the assets found here.

It may be that under the broad declarations contained in the case of *In re Estate Neubert,* 58 S. C., 469, 36 S. E., 908, the foreign executor might not be granted letters testamentary in this State, certainly an administrator with the will annexed could be, in analogy to Section 5368, Vol. 3, Code.

In *Shaw v. R. Co.,* 314 Mo., 123, 282 S. W., 416, it was held that a foreign administratrix may bring an action in Missouri under the Federal Employers' Liability Act for the wrongful death of her intestate in Illinois.

In *Reilly v. Antonio Co.,* 108 Conn., 436, 143 A., 568, it was held that the New York administratrix was entitled to sue in Connecticut for decedent's death which occurred in New York, under a New York statute similar to Lord Campbell's Act, either as ancillary administratrix or as trustee of the beneficiaries.

In *Knight v. R. Co.,* 160 Iowa, 160, 140 N. W., 839, 840, it was held:

"It is the general rule that a foreign administrator cannot maintain an action in this State to recover the assets of the State until he qualify as such in accord with the provision of Section 3306 of the Code. *McClure v. Bates,* 12 Iowa, 77; *Chamberlain [Chamberlin] v. Wilson,* 45 Iowa, 149. This is a general rule which is recognized in practically all jurisdictions. The underlying reason for it is that no state will allow property within its jurisdiction to be so appropriated by a foreign administrator as to destroy the opportunity of its own citizens to enforce their claims against it. To this rule some exceptions are recognized by some Courts. It has been quite frequently held that, where a foreign administra-

tor has a right of action as 'a mere trustee for the benefit of particular beneficiaries, he may maintain such action in such capacity. This exception rests in part upon the theory that the cause of action in such a case is not a part of the assets of the estate, and that therefore the resident creditors of the decedent within the State are in no wise affected."

In *Midland R. Co. v. Lemoyne,* 104 Ark., 327, 148 S. W., 654, it was held that an action for causing death, being a transitory action, may be maintained by a foreign administratrix.

In *Boulden v. R. Co.,* 205 Pa., 264, 54–A, 906, 907, a citizen of New Jersey was killed in that State; administration was granted there; the administrator, a foreign administrator so far as the Courts of Pennsylvania were concerned, brought an action in a Court of Pennsylvania for damages under Lord Campbell's Act, without taking out ancillary administration in Pennsylvania. It was objected that this could not be done, but the Supreme Court of Pennsylvania held otherwise, saying:

"We have held that a suit will lie here for a cause of action arising in another State out of the alleged negligence of the defendant in that State, resulting in death. *Knight v. West Jersey R. Co.,* 108 Pa., 250, 56 Am. Rep., 200. It has also been expressly decided by this Court, in a case arising under the New Jersey statute in question here, that the only proper plaintiff in such action in Pennsylvania is the individual in whom the right of action is vested by the laws of the State where the injuries were inflicted. *Usher v. West Jersey R. Co.,* 126 Pa., 206, 17–A, 597, 4 L. R. A., 261, 12 Am. St. Rep., 863. The New Jersey statute provides that the 'action shall be brought by and in the names of the personal representatives of such deceased person.' This action was brought; in compliance with the statute, in the name of the personal representative of Frank R. Boulden, the deceased, and the statement avers that the damages are recoverable for the exclusive benefit of his widow and next of kin. It would

therefore appear that in this action the plaintiff has followed strictly not only the statutory requirement, but onr construction of it. * * * It is unquestionably true that the plaintiff is not authorized to intermeddle with the assets of the decedent within this State. Our statute plainly forbids her assuming any such authority. But in this action, as we have seen, she is not seeking to recover the assets of the decedent, nor any money in which the decedent, or those claiming through him, have any interest whatever. No heir, legatee, or creditor of the decedent can have any claim on the fund collected in this suit. The Statute of 1832 therefore has no application to the facts of the case. The right of action for damages resulting from death did not survive at common law. This action, therefore, is purely statutory; the right to recover here being founded on a statute of New Jersey. It created the cause of action, named the party who should enforce it, and designated the beneficiaries under it. It is elementary law that the statute must be strictly pursued, and hence the rights secured by it can only be enforced by an action in the name of the party therein specially authorized. As we have seen, the New Jersey statute confers the right of action in cases of this kind on the personal representative of the deceased. He acts, therefore, not by the authority which the probate Court gave when it granted him the power to administer the estate of the deceased, but solely by virtue of the authority vested in him by the statute. It designated the personal representative of the deceased, whoever he might be, as the party to enforce the right of action given by the statute. In bringing this suit, therefore, the plaintiff does so not as the personal representative of her deceased husband, and by virtue of the authority conferred upon her as such, but as the representative or trustee of the parties for whose benefit the action was instituted, and by the authority conferred upon her by the statute. The right of action might have been conferred upon the beneficiaries themselves, or upon any private person or public official; and,

if it had been, it is too clear for argument that there could be no question of the right of the person or official thus designated to maintain the action. The fact that the Legislature of New Jersey saw proper to invest the right to bring the action in the person acting as the personal representative of the deceased, instead of conferring the authority upon some other person or official, does not make the person the representative of the deceased in prosecuting the case and therefore, bring him within the prohibition of the Act of 1832."

In *St. Louis, etc., R. Co., v. Graham,* 83 Ark., 61, 102 S. W., 700, 701, 119 Am. St. Rep., 112, the Court said:

"The first question presented is as to the right of a foreign administrator to maintain such an action in this State. This is an action founded upon the Lord Campbell's Act (Sections 6289, 6290, Kirby's Dig.). The argument is made that a foreign administrator can only recover in this State for sums which would be assets for the payment of debts, and *Fairchild v. Hagel,* 54 Ark., 61, 14 S. W., 1102, is relied upon. But that decision cannot be taken to mean anything beyond the law as applied to the facts therein. It was dealing with a foreign administrator seeking to recover lands in this State, and what was said of that action was well said; but the decision does not apply to a state of facts where recovery is sought in a personal action by a foreign administrator for the benefit of the next of kin. The administrator in the *Hagel case* could not recover because an Arkansas administrator bringing a similar suit could not have recovered. The statute gave the foreign administrator no greater power than the home administrator, but did give him the same power to maintain suit. This question was fully considered by the Supreme Court of the United States in the case of *Dennick v. Central R. R. Co.,* 103 U. S., 11, 26 L. Ed., 439. While there is some difference in the adjudications on this subject, the reasoning of Mr. Justice Miller, speaking for the Court in that case, presents the better position. It was likewise held

in the *St. Louis, etc., Ry. Co., v. Cleere,* 76 Ark., 377, 88 S. W., 995, that a foreign administrator could sue and recover under Lord Campbell's Act for injury in this State."

In *Robertson v. R. Co.,* 122 Wis., 66, 99 N. W., 433, 66 L. R. A., 919, 106 Am. St. Rep., 925, the decedent was killed in the State of Washington; he was a resident of the State of Michigan, and letters of administration were granted there to his widow; she brought action in a Court of Wisconsin without taking out ancillary administration in the last-named State. Upon objection that the suit could not be maintained, the Court held, quoting syllabus:

"An action may be maintained by an administrator appointed in another state to recover for the negligent killing of his intestate in this State, such appointment having been made at the domicile of the decedent."

In *Hodges v. Kimball* (C. C. A.), 91 F., 845, the decedent was a citizen of Tennessee, where letters of administration were granted; he was killed in Virginia, where the administrators brought suit. It was objected that their suit could not be maintained. The Court held otherwise, holding, quoting syllabus:

"The fact that a right of action for wrongful death is given to the administrator of the decedent by a state statute does not limit such right of action to an administrator appointed in that state."

In *Dodge v. North Hudson* (C. C.), 177 F., 986, 987, it was held, quoting syllabus:

"Where a non-resident suffers wrongful death in New York, the right of action for his death constitutes sufficient assets to entitle his domiciliary administrator to ancillary letters of administration in New York for the prosecution of such action."

The Code, Vol. 3, § 5368, offers no objection to the ability of the foreign executrix to maintain the action, for it applies only to wills probated in this State where the appointed executor is a foreign resident.

It follows that as the suit could only have been maintained by either the executrix, who qualified under the laws of Georgia, or by her, qualifying by exemplified will as executrix under the laws of this State, or by her as ancillary administratrix, it cannot be maintained by the present administrator. We are inclined to think, as above indicated, that it could have been maintained by the executrix who qualified under the laws of Georgia, without the necessity of requalifying in this State, or of taking out ancillary letters of administration.

The judgment of this Court should be that the decree of the Circuit Court be reversed, and that the case be remanded to the Circuit Court with direction to pass an order reversing the decree of the Probate Court and revoking the letters of administration granted to the respondent Moore.