15494

STUBBS v. RATLIFF *ET AL.*

(24 S. E. (2d), 127)

April, 1942.

*Mr. Banks D. Thomas,* of Wadesboro, N. C., and *Mr. J. Arthur Knight,* of Chesterfield, Counsel for Appellants,

*Mr. J. E. Leppard,* of Chesterfield, and *Mr. C. T. Graydon,* of Columbia, Counsel for Respondent,

␀ Counsel for Appellants, in Reply,

·January 25, 1943.

The Opinion of the Court was delivered by CIRCUIT JUDGE L. D. LIDE, ACTING ASSOCIATE JUSTICE:

W. L. Stubbs, Sr., was a resident of Chesterfield County at the time of his death which occurred on or about August 2, 1940. He was killed while riding a bicycle which was in collision on a highway in that County with a motor truck of the defendants, a partnership engaged as a common carrier of goods for hire in and through the County of Chesterfield and other parts of the State of South Carolina.

This action was commenced in the Court of Common Pleas for Chesterfield County on or about the 11th day of February, 1941, to recover the sum of $50,000.00 damages, actual and punitive, for the death of W. L. Stubbs, Sr., alleged to have been caused by the negligence and willfulness of the defendants in the operation of the motor truck above referred to. The action was brought by W. L. Stubbs, Jr., as administrator of the estate of W. L. Stubbs, Sr., for the benefit of the widow and children of the deceased, whose names are set forth in the complaint, the plaintiff being one of them, and the action is expressly brought under and by virtue of the statute commonly known as Lord Campbell's Act.

The case was in due time removed to the United States District Court for the Eastern District of South Carolina, and the subsequent pleadings were drawn in accordance with the practice of that Court, including a motion to dismiss the complaint upon a jurisdictional ground, such a motion being equivalent to a demurrer under our practice. And it appears that on April 17, 1941, a consent order was handed down by the District Court remanding the cause to the Court of Common Pleas for Chesterfield County.

Hence on April 20, 1942, the motion to dismiss, the same being treated by all counsel as a demurrer, came on to be heard before Hon. Henry T. Busbee, Special Judge presiding in Chesterfield, and the question raised by the demurrer arose from the fact that it appears on the face of the complaint that although it is alleged that the plaintiff is the duly appointed administrator of the estate of W. L. Stubbs, Sr., deceased, it is also alleged that the plaintiff is a resident and citizen of the Town of Hamlet, County of Richmond, State of North Carolina, and the specific ground of the demurrer is that a nonresident cannot be appointed the administrator of a decedent who at the time of his death was domiciled in South Carolina; or stating the ground more precisely, that a nonresident cannot be appointed the primary or domestic administrator of a person who at the time of his death was domiciled in South Carolina.

Special Judge Busbee handed down his order overruling and refusing the motion thus treated as a demurrer, upon the authority of the case of *Ex parte Peele,* 85 S. C., 140, 67 S. E., 135, and an act of the General Assembly originally adopted in 1933, and to which reference will hereinafter be made.

From this order the defendants appeal to this Court, and counsel for appellants in their brief state that the single fundamental proposition involved might be treated as raising three questions, to wit:

(1) What was the law governing the appointment of nonresidents as primary administrators prior to March 18, 1933, the date of approval of the 1933 act?

(2) What is the proper interpretation of that act as thereafter amended?

(3) "Can appellants take advantage of the illegal appointment of the administrator by the Probate Court in this action?"

It is admitted that at common law a nonresident of the State was eligible for appointment as an administrator of the estate of a decedent who at the time of his death was a resident of and domiciled in this State. But in 1878 an act of the General Assembly was passed, the terms of which are now embodied in Sections 9015 and 9016, Code 1942; and in the case of *In re: Estate of Neubert,* 58 S. C., 469, 36 S. E., 908, in which the opinion of the Court was delivered by Chief Justice McIver, he expressed the view that the effect of this legislation was that a nonresident could not be granted letters of administration in this State, but this was clearly *obiter dictum,* because in that case a resident had been appointed, and the validity of that appointment on other grounds is apparent.

And in the later case of *Ex parte Peele, supra,* the Court expressly and specifically held that a nonresident may be appointed administrator in this State of the estate of a resident of this State, and that the statute of 1878 did not in this respect change the pre-existing law. This was the only question involved in the case, and the opinion of the Court delivered by Mr. Justice Woods is clear and unequivocal. In the course of this opinion he refers with great respect to the remarks of Chief Justice McIver in the case of *In re: Estate of Neubert, supra,* but holds that they were *obiter dicta* because "the case in no wise depended on that point." (85 S. C., 140, 67 S. E., 136.) Among other things he says: "Even an *obiter dictum* from Chief Justice McIver is entitled to great consideration; but

it should not control when opposed to the result of careful examination of the law in a case where the question is directly involved." Beyond all peradventure then the *Peele case* settled the law in this State, and it has never been modified or overruled by any judicial decision whatever. It is true that some comments in passing, referring to the *Neubert case,* are made in the opinion of the Court in *Southern Ry. Co. v. Moore,* 158 S. C., 446, 155 S. E., 740, 73 A. L. R., 582, but these comments were so clearly unnecessary to the decision of the case they require no discussion.

The law thus declared by the Court was evidently recognized by the General Assembly, but the Act of 1933, to which reference has been made, prescribes certain regulations relating to the appointment of nonresidents as administrators, guardians, committees or trustees. This Act, approved March 18, 1933, No. 151 (Acts 1933, page 200), contains the usual repealing clause and the usual provision that the Act shall take effect upon its approval, and the following sets forth all the remainder of the Act, to wit, the title and Section 1 thereof:

"An Act to regulate the appointment of non-resident individuals or corporations as administrators, guardians, committees or trustees.

"Section 1. Be it enacted by the General Assembly of the State of South Carolina: That no letters Testamentary, Letters of Guardianship, Appointment of Committee or Trustee shall be granted or issued to any non-resident individual or foreign corporation by the Probate Judge or Courts of Common Pleas of this State, unless such applicant for such appointment as Administrator, Guardian, Committee or Trustees shall first enter into and file approved fiduciary bond in same manner, upon the same conditions, in the same sum, and with like surety as is required by law with respect to resident Administrators, Guardians, Committees and Trustees, nor unless such applicant for such appointment shall first file with the Probate Judge or Clerk of Court

of Common Pleas where such application for appointment is made, his or its consent in writing, that service of all claims, demands, debts, dues, summons and any other process of pleadings, in Suits or Actions relating to the Administration of Estate in his or its charge in this State, by service of the same upon such resident of said County as may be appointed in such written instrument, and in the event of the death, removal, resignation absence·from the State, or any other inability to obtain service upon said agent named in said written instrument, or any successor named by similar instrument filed with the Probate Judge or Clerk of Court of Common Pleas, then upon the Probate Judge or Clerk of Court of Common Pleas of said County."

This Act was amended in 1934 by adding a proviso to Section 1 (Acts 1934, page 1402); and it was further amended in 1935 so as to add another proviso (Acts 1935, page 386). But neither of these provisos affects the matter under consideration.

It is, however, argued in behalf of the appellants that the statute cannot be construed to authorize the appointment of a nonresident as administrator, that is to say, as a "primary or domestic" administrator, but that it was intended only to permit the granting of an ancillary administration, with the will annexed, to a nonresident. But we are wholly unable to concur in this view. A careful reading of the statute, including the title, indicates that the act was dealing with the appointment of administrators without regard to whether the appointment be a "primary or domestic" one, or whether it be ancillary. It is indeed true that the phrase, "letters Testamentary," is used, while a more accurate expression would have been "letters of administration"; but obviously this rather loose use of the phrase, "letters Testamentary," should not be construed to defeat the plain intent and meaning of·the Act. And indeed, if, as counsel for appellants contend, the Act refers only to ancillary adminis-

trations, the phrase, "letters Testamentary," would be equally inapt.

Counsel for the appellants and for the respondent respectively discussed in their briefs the question of whether the oppointment of an administrator may be collaterally attacked; but this question does not appear to have been presented to or ruled upon by the Court below, and hence we do not think it is properly before us for decision.

It follows that the exceptions should be overruled and the order of the Circuit Court affirmed.

Affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE, concur.